David Puryear, Justice
In this interlocutory appeal, we are faced with a legal question of first impression: can a motion to dismiss authorized by the Texas Citizens Participation Act (TCPA) be used to dismiss one's own administrative appeal? See Tex. Civ. Prac. & Rem. Code § 27.003. In the proceedings below, Michael Quinn Sullivan appealed to the district court a final order of the Texas Ethics Commission determining that he *851 failed to register as a lobbyist and assessing a civil penalty against him. See Tex. Gov't Code §§ 305.003, .032. Pursuant to Sullivan's own motion, the trial court realigned the parties, naming the Commission as plaintiff and Sullivan as defendant, due to the Commission carrying the burden of proof in the "trial de novo" of the Commission order. See id. § 571.133(d). The Commission amended its pleadings accordingly, and Sullivan responded by filing a TCPA motion to dismiss the Commission's amended pleading, which the trial court denied. Because application of the TCPA under these circumstances cannot be harmonized with the more specific statutory procedures for judicial review of Commission orders, we hold that the TCPA does not apply and affirm the trial court's denial of Sullivan's TCPA motion. We reverse, however, the trial court's award of attorney's fees and costs to the Commission because the record does not support the trial court's findings that Sullivan's motion was frivolous or solely intended to delay the proceedings.
BACKGROUND
The Commission is a state agency established to "provide guidance on various public ethics laws." See Tex. Const. art. III, § 24a. It is charged with administering and enforcing chapter 305 of the government code, which governs lobbyist registration, reports, and activities. See Tex. Gov't Code §§ 305.001 -.036, 571.061(a)(1).
The events relevant to this dispute concern Sullivan's conduct in 2010 and 2011, when he was (and remains) the President of Empower Texans,[1] a non-profit corporation that "educate[s] and inspire[s] Texans to exercise effective citizenship" and "empower[s] taxpayers to advocate for good governance and hold their elected officials accountable" through its use of "research, reporting, and advocacy."[2] Government code section 305.003 requires a person to register with the Commission as a lobbyist if certain enumerated conditions are met. See id. § 305.003(b) (requiring registration if person (1) received compensation in excess of $1,000 in calendar quarter (2) from another person (3) as part of regular employment and (4) communicated directly with member of legislative or executive branch (5) to influence legislation). The Commission, as well as the attorney general and any county or district attorney, may enforce chapter 305, including the lobbyist-registration statute. See id. § 305.035(a).
In April 2012, the Commission received two sworn complaints filed by Texas legislators alleging Sullivan's failure to register in 2010 and 2011. See id. §§ 305.035(c) ("A person may file with the appropriate prosecuting attorney or with the commission a written, sworn statement alleging a violation of this chapter."), 571.122 (providing procedures and requirements for sworn complaints). The Commission conducted a formal evidentiary hearing on the matter, see id. § 571.121 (authorizing Commission to hold hearings on sworn complaints and render decisions thereon), after which it concluded that Sullivan-a "professional lobbyist compensated by Empower Texans and its related entities for employment activities that include direct advocacy"-was required to register but failed to do so, see id. § 305.003. The Commission's final order assessed a $10,000 civil penalty against Sullivan. See id. § 305.032 (stating that person who fails to register as lobbyist shall pay civil penalty in amount determined by Commission rule).
Sullivan timely filed an appeal of the Commission's final order by filing a petition *852 in Denton County district court. See id. § 571.133 (authorizing appeal). His petition alleged that his "cause of action" was a "de novo appeal of the Commission's July 21, 2014 Final Order pursuant to Tex. Gov't Code § 571.133." See id. (providing for de novo trial); see also id. § 2001.173 (in trial de novo, "the reviewing court shall try each issue of fact and law in the manner that applies to other civil suits in this state as though there had not been an intervening agency action or decision but may not admit in evidence the fact of prior state agency action or the nature of that action except to the limited extent necessary to show compliance with statutory provisions that vest jurisdiction in the court"). As a result of Sullivan's petition, the Commission's final decision was automatically vacated. See id. § 2001.176(b)(3) ("[T]he filing of the petition vacates a state agency decision for which trial de novo is the manner of review authorized by law but does not affect the enforcement of an agency decision for which another manner of review is authorized.").
The Commission answered the lawsuit and moved to transfer venue to Travis County, alleging that Sullivan resided in Travis County and that mandatory venue, therefore, lay in Travis County.[3] See id. § 571.133(a). Later that same day, Sullivan filed a motion to realign the parties, seeking to name the Commission as plaintiff and himself as defendant, as the Commission bears the burden of proof in a trial de novo. See id. § 571.133(d) ("The reviewing court shall try all issues of fact and law in the same manner as applicable to other civil suits in this state."); Texas Ethics Comm'n v. Goodman , No. 02-09-094-CV, 2010 WL 323544, at *3 (Tex. App.-Fort Worth Jan. 28, 2010, no pet.) (mem. op.) (noting that respondent to Commission final order who perfected appeal in district court for trial de novo was "defendant" below and had filed summary-judgment motion on his affirmative defense to Commission's allegations). The trial court granted the agreed motion to realign, and the Commission then filed an amended pleading as plaintiff, alleging two "counts" against Sullivan for violating the lobbyist-registration statute and seeking the maximum allowable civil penalty.
Within two weeks of the Commission filing its amended pleading, Sullivan moved to dismiss the pleading under the TCPA. After two hearings before two Denton County district judges, the trial court granted the motion and denied the Commission's motion to transfer venue.[4] The Commission appealed the venue determination and dismissal to the Fort Worth Court of Appeals, which reversed and remanded *853 for a trial de novo in Travis County. Texas Ethics Comm'n v. Sullivan , No. 02-15-00103-CV, 2015 WL 6759306, at *9 (Tex. App.-Fort Worth Nov. 5, 2015, pet. denied) (mem. op.). The Fort Worth Court of Appeals did not express any opinion about Sullivan's motion to dismiss under the TCPA, although the reversal of the venue determination-as a "threshold determination"-resulted in the vacating of the Denton County district court's grant of Sullivan's motion to dismiss. See itation index="2" url="https://cite.case.law/citations/?q=2015%20WL%206759306">id.
The Travis County district court conducted yet another hearing on Sullivan's motion to dismiss and denied it. The trial court also made a finding that his motion was frivolous and intended solely to delay and granted the Commission's request for attorney's fees and costs. See Tex. Civ. Prac. & Rem. Code § 27.009(b). Sullivan appeals both rulings.
DISCUSSION
Can the TCPA be used to dismiss one's own administrative appeal?
The TCPA protects citizens who petition or speak on matters of public concern from retaliatory lawsuits that seek to intimidate or silence them. In re Lipsky , 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding); see generally Tex. Civ. Prac. & Rem. Code §§ 27.001 -.011. Its "purpose is to identify and summarily dispose of lawsuits designed only to chill First Amendment rights, not to dismiss meritorious lawsuits." Lipsky , 460 S.W.3d at 589 ; see Tex. Civ. Prac. & Rem. Code § 27.002 ("The purpose of this chapter is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury.").
A party moving to dismiss under the TCPA must "show[ ] by a preponderance of the evidence that the [nonmovant's] legal action is based on, relates to, or is in response to the [movant]'s exercise of (1) the right of free speech; (2) the right to petition; or (3) the right of association." Tex. Civ. Prac. & Rem. Code § 27.005(b). A "legal action" is defined broadly: "a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or equitable relief." Id. § 27.001(6). "Exercise of the right of free speech" is defined as "a communication made in connection with a matter of public concern." Id. § 27.001(3). "Exercise of the right to petition" is defined, in part, as "a communication in connection with an issue under consideration or review by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding."Id. § 27.001(4)(B). If the movant meets his initial burden, the burden then shifts to the nonmovant to establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." Id. § 27.005(c).
Given these broad definitions, it very well might be that the Commission's amended pleading as realigned plaintiff alleging two counts of Sullivan's violation of the lobbyist-registration statute might facially constitute a "legal action" that "relates to" Sullivan's "exercise of the right of free speech [and] to petition" if read in isolation. See id. §§ 27.001(3), (4)(B), (6), .005(b); see also Hersh v. Tatum , 526 S.W.3d 462, 467 (Tex. 2017) (observing that pleading's allegations are " '[the] best and all-sufficient evidence of the nature of the action' " in determining whether act applies) (quoting Oakland Motor Car Co. v. Jones , 29 S.W.2d 861, 865 (Tex. Civ. App.-Eastland 1930, no writ) ). However, the act does not protect the unfettered constitutional rights of free speech and to petition but, rather, expressly protects *854 those rights only "to the maximum extent permitted by law. " Tex. Civ. Prac. & Rem. Code § 27.002 (emphasis added). The lobbyist-registration statute at issue is a legally permissible restriction on those rights. See Citizens United v. Federal Election Comm'n , 558 U.S. 310, 369, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010) (noting that Supreme Court has upheld registration and disclosure requirements on lobbyists, even though Congress has "no power to ban lobbying itself"); see also City of Renton v. Playtime Theatres, Inc. , 475 U.S. 41, 47, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986) (holding that "content-neutral" time, place, and manner restrictions on speech are valid, provided they are narrowly tailored to serve substantial governmental interest and do not unreasonably limit alternative channels of communication). According to the Commission's allegations, Sullivan exceeded the "maximum extent" of permissible exercise of his free-speech and petition rights by failing to register as a lobbyist.
The TCPA does not exist in a vacuum but coexists with chapters 305 and 571 of the government code, which regulate lobbyists and the Commission, respectively. In passing the lobbyist-registration statute, the legislature acknowledged that regulating lobbying necessarily implicates First Amendment rights, attempting to strike a balance between individuals' rights to speak and petition freely and the public's interest in an uncorrupted and transparent legislative branch:
The operation of responsible democratic government requires that the people be afforded the fullest opportunity to petition their government for the redress of grievances and to express freely their opinions on legislation, pending executive actions, and current issues to individual members of the legislature, legislative committees, state agencies, and members of the executive branch. To preserve and maintain the integrity of the legislative and administrative processes, it is necessary to disclose publicly and regularly the identity, expenditures, and activities of certain persons who, by direct communication with government officers, engage in efforts to persuade members of the legislative or executive branch to take specific actions.
Tex. Gov't Code § 305.001 ; see also id. § 571.001 ("It is the policy of the legislature to protect the constitutional privilege of free suffrage by regulating elections and prohibiting undue influence while also protecting the constitutional right of the governed to apply to their government for the redress of grievances. This chapter is intended to achieve those purposes...."). Sullivan does not challenge the constitutionality of the lobbyist-registration statute, which enacts the policy expressed above. Indeed, the lobbyist-registration statutory scheme presumes that a complaint lodged against a purported lobbyist "is based on, relates to, or is in response to" the respondent's exercise of First Amendment rights. See id. § 305.001. It also provides a remedy for "frivolous" or "bad faith" complaints filed against purported lobbyists. See id. § 571.176(a) ("The commission may impose a civil penalty of not more than $10,000 for the filing of a frivolous or bad-faith complaint. In this subsection, 'frivolous complaint' means a complaint that is groundless and brought in bad faith or is groundless and brought for the purpose of harassment.").
The legislature has charged the Commission with enforcing the lobbyist-registration statute, see id. § 305.032, and it has outlined a mandatory procedure that the Commission and respondent must follow after a sworn complaint is filed with the Commission, see id. §§ 571.122-.133. This procedure includes a "preliminary review" hearing and a "formal hearing," both conducted by the Commission, after which a decision of the Commission is final unless *855 the respondent files a petition for review (an appeal) in district court within thirty days of receiving the decision. Id. §§ 571.125-.133. Upon the respondent's filing of an appeal, the Commission bears the burden of proving that the respondent violated the registration statute-in other words, that the respondent's exercise of his free-speech and petition rights exceeded that which is "permitted by law." See id. § 571.133(d) (noting that respondent's appeal "shall be determined by trial de novo"); Tex. Civ. Prac. & Rem. Code § 27.002 (outlining that purpose of TCPA is to safeguard constitutional rights "to the maximum extent permitted by law" while protecting people's rights to file meritorious lawsuits). It follows, then, that the very issue to be tried in such an appeal is whether the respondent exercised his rights beyond what the law permits. The fact that the legislature has, in the first instance, entrusted that determination to the Commission (via the administrative-hearings process) and, in the second instance, to the district courts (via a de novo appeal at the election of the respondent ) leads us to conclude that the issue itself-Did the respondent violate the registration statute?-is categorically "meritorious." In other words, the legislature (a) has contemplated that the Commission will at times be forced to litigate the question of whether a person has failed to register as a lobbyist and, moreover, (b) has expressly sanctioned such litigation via a de novo appeal. Application of the TCPA in this context would frustrate the legislature's specific and thorough schemes outlined in chapters 305 and 571 for enforcement of the lobbyist-registration statute.
A statute is presumed to have been enacted by the legislature with complete knowledge of the existing law and with reference to it. Acker v. Texas Water Comm'n , 790 S.W.2d 299, 301 (Tex. 1990). "A legislative enactment covering a subject dealt with by an older law, but not repealing that law, should be harmonized whenever possible with its predecessor in such a manner as to give effect to both." Id. If the two statutes cannot be harmonized, the more specific statutory provision prevails over the general one. Texas Indus. Energy Consumers v. CenterPoint Energy Hous. Elec., LLC , 324 S.W.3d 95, 107 (Tex. 2010) ; Texas Lottery Comm'n v. First State Bank of DeQueen , 325 S.W.3d 628, 637 (Tex. 2010) ; see Tex. Gov't Code § 311.026(b) ("If the conflict between the general provision and the special or local provision is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later enactment and the manifest intent is that the general provision prevail."); see also id. § 311.023 (providing that, in interpreting statute, court may consider object sought to be attained by statute and consequences of particular statutory construction).
A broad and isolated interpretation of the TCPA would sweep all "legal actions" related to the exercise of First Amendment rights under its purview, arguably including even the Commission's amended pleading as realigned plaintiff in this de novo appeal. However, chapters 305 and 571 predate the TCPA and provide a specific procedure for addressing allegations already admittedly related to one particular iteration of the exercise of First Amendment rights: lobbying. In light of this specific statutory framework, the only reasonable way to harmonize the TCPA and chapters 305 and 571 is to conclude that the TCPA's catch-all term "legal action" does not encompass de novo appeals of Commission orders enforcing the lobbyist-registration statute wherein the Commission seeks no new relief but prays only that the district court uphold the Commission's previous violation and penalty determinations. To hold otherwise *856 would allow respondents to end-run the specifically enacted scheme for enforcement of the lobbyist-registration statute, a result the legislature could not have intended when enacting the TCPA.[5] See In re Blair , 408 S.W.3d 843, 848 (Tex. 2013) (orig. proceeding) ("[C]ourts will not interpret statutes to work absurd results.") (citing Jose Carreras, M.D., P.A. v. Marroquin , 339 S.W.3d 68, 73 (Tex. 2011) ); Farmers Texas Cty. Mut. Ins. Co. v. Romo , 250 S.W.3d 527, 538 (Tex. App.-Austin 2008, no pet.) (same); see also Craig v. Tejas Promotions, LLC , 2018 WL 2050213, at *11 (Tex. App.-Austin May 3, 2018, no pet. h.) (mem. op.) (concluding that "the context of appellants' [TCPA] motion, the TCPA as a whole, and the potential constitutional implications favor an alternative construction of the 'legal action' definition" than literal and isolated construction of term propounded by movant); In re Estate of Check , 438 S.W.3d 829, 836 (Tex. App.-San Antonio 2014, no pet.) (rejecting appellant's literal and expansive interpretation of "legal action" to include amended counterclaim, reasoning that "such an interpretation would lead to absurd results not intended by the Legislature").
With presumed full awareness of the statutory procedure for seeking judicial review of Commission orders finding violations of chapter 305, the legislature cannot have intended to undermine that very procedure in enacting the TCPA, especially considering the TCPA's purpose. See Lipsky , 460 S.W.3d at 589 ; see also Tex. Civ. Prac. & Rem. Code § 27.002 ; Franka v. Velasquez , 332 S.W.3d 367, 393 (Tex. 2011) (stating that statutory language should not be read as pointless if reasonably susceptible of another construction, and courts should consider statute's objective and consequences of particular construction); In re Derzapf , 219 S.W.3d 327, 332 (Tex. 2007) (orig. proceeding) (rejecting interpretation of SAPCR general standing statute that would render more specific grandparent-access statute superfluous); Acker , 790 S.W.2d at 301 (noting that statutory repeals by implication are not favored, and legislative enactments covering subject dealt with by older law, but not repealing it, should be harmonized whenever possible so as to give effect to both). We reject Sullivan's proposed interpretation of the TCPA, and we hold that the TCPA does not apply to the circumstances here.[6]
Did the trial court err in awarding the Commission attorney's fees and costs ?
In his second issue, Sullivan asserts that the trial court erred in awarding the Commission its attorney's fees and costs because the Commission offered "no evidence" to support the court's findings that his TCPA motion was "frivolous" and "solely intended to delay."[7] See Tex. Civ. Prac. & Rem. Code § 27.009(b) ("If the court finds that a motion to dismiss filed under this chapter is frivolous or solely intended to delay, the court may award court costs and reasonable attorney's fees *857 to the responding party."); In re K.M.L. , 443 S.W.3d 101, 112 (Tex. 2014) ("Our traditional legal sufficiency-or 'no evidence'-standard of review upholds a finding supported by '[a]nything more than a scintilla of evidence.' ") (quoting Formosa Plastics Corp. U.S.A. v. Presidio Eng'rs & Contractors, Inc. , 960 S.W.2d 41, 48 (Tex. 1998) ); see also Burbage v. Burbage , 447 S.W.3d 249, 259 (Tex. 2014) ("More than a scintilla exists when the evidence would enable reasonable and fair-minded people to reach different conclusions."). In general, we review a trial court's decision to award attorney's fees for an abuse of discretion and review the amount awarded under a legal-sufficiency standard.[8] Aaron Rents, Inc. v. Travis Cent. Appraisal Dist. , 212 S.W.3d 665, 671 (Tex. App.-Austin 2006, no pet.). A trial court abuses its discretion if its decision "is arbitrary, unreasonable, and without reference to guiding principles." Goode v. Shoukfeh , 943 S.W.2d 441, 446 (Tex. 1997). A party seeking attorney's fees and costs bears the burden to put forth evidence regarding its right to the award, as well as the reasonableness and necessity of the amount. Fawcett v. Grosu , 498 S.W.3d 650, 666 (Tex. App.-Houston [14th Dist.] 2016, pet. denied).
The TCPA does not define "frivolous," but the word's common understanding contemplates that a claim or motion will be considered frivolous if it has "no basis in law or fact," see Webster's Third New Int'l Dictionary (2002) 913, and "lack[s] a legal basis or legal merit," see Black's Law Dictionary (9th ed. 2009) 739. On this record and in accordance with our discussion above, in which we conclude that Sullivan's motion might be argued to technically fit the act's broad definition of a "legal action," we conclude that the trial court abused its discretion in concluding that Sullivan's TCPA motion was frivolous. See Wooley v. Schaffer , 447 S.W.3d 71, 76 (Tex. App.-Houston [14th Dist.] 2014, pet. denied) (concluding that determination of whether cause of action has any basis in law and fact is legal question that courts review de novo). We cannot say that, as a matter of law, his motion had no basis in law or fact, and we sustain Sullivan's complaint with respect to the court's finding of frivolity.
We also consider Sullivan's complaint that the court's other finding in support of the award-that Sullivan's motion was "solely intended to delay"-was not supported by legally sufficient evidence. The Commission alleges the following in support of that finding: (1) Sullivan's initial filing of this appeal in Denton County, an improper venue; (2) the implicit fact that Sullivan was "well aware" that the Commission would be able to meet its prima facie burden with respect to all elements of its allegations due to his involvement in the administrative proceedings; and (3) the fact that Sullivan's counsel drafted the TCPA motion four months before the Commission filed its amended pleading as realigned plaintiff, indicating that Sullivan intended to use the TCPA as a fee-shifting "sword" rather than a speech-protecting "shield."[9] While these circumstance might support a finding that delay was a factor in Sullivan's decision to file the motion, they do not support a reasonable finding that delay was the only *858 factor, in light of the entire record and our conclusion that his motion was not frivolous. Another plausible factor for Sullivan's filing of the motion was to posit an arguably meritable legal theory about the applicability of the TCPA-"arguably meritable" based on our conclusion above that the Commission's pleading might very well fit the broad definition of a "legal action."
Additionally, Sullivan contended below that he could prove a defense to the Commission's allegations via the so-called "media exception," an argument we did not need to reach to decide the merits of this appeal. See Tex. Civ. Prac. & Rem. Code § 27.005(d) ("The court shall dismiss a legal action against the moving party if the moving party establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim."); Tex. Gov't Code § 305.004(1) (providing that persons who are employed by "bona fide news medium" that in ordinary course of business disseminates news and editorial comment opposing or promoting legislation need not register as lobbyists, provided they do not also engage in other activities requiring registration under chapter). Sullivan's attempt to defeat the Commission's allegations with this defense belies a finding that his motion was filed solely to delay. On this record, we conclude that the evidence cited by the Commission supports a finding that delay may have been one of the reasons for the motion's filing; however, the evidence as a whole does not allow for a reasonable and fair-minded factfinder to disregard the other potential reasons and conclude that delay was the sole reason, which is what the statute requires. See Tex. Civ. Prac. & Rem. Code § 27.009(b) ; see also Burbage , 447 S.W.3d at 259 (noting that evidence in support of vital fact does not rise above scintilla if it creates mere surmise or suspicion of vital fact); City of Keller v. Wilson , 168 S.W.3d 802, 807 (Tex. 2005) (noting that on legal-sufficiency review, appellate courts consider evidence in light most favorable to judgment, "crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not"). We sustain Sullivan's second issue and hold that the trial court abused its discretion in awarding the Commission its attorney's fees and costs.
CONCLUSION
We hold that a person who files a suit for judicial review of a Commission order enforcing chapter 305 of the government code may not employ a TCPA motion to dismiss that very suit after realignment of the parties and the agency's subsequent filing of an amended pleading seeking the same relief as that granted in the administrative order. Accordingly, we affirm the trial court's order denying Sullivan's TCPA section 27.003 motion to dismiss. However, we reverse the trial court's award to the Commission of its attorney's fees and costs and render judgment denying the Commission's request for attorney's fees and costs.

Empower Texans also operates under the name Texans for Fiscal Responsibility.

These descriptions appear on Empower Texans's website. See https://empowertexans.com/about/ (last visited April 30, 2018).

The Commission's "Motion to Transfer Venue and Original Answer" alleged that Sullivan had judicially admitted that he resides in Travis County in each of the four separate lawsuits he had recently filed against the Commission-all related to the same Commission proceedings on appeal here-the latest venue "admission" occurring just days before Sullivan filed this lawsuit.

The first Denton County district judge to consider the motion to dismiss, Steve Burgess, was recused pursuant to the Commission's motion filed very soon after that judge conducted a lengthy hearing on the motion to dismiss. At the hearing, Judge Burgess announced that he was ruling in favor of Sullivan, pending a hearing on attorney's fees. The Commission's motion to recuse alleged that Judge Burgess had been a "follower" of Sullivan on Twitter, had access to Sullivan's "tweets" about the case and the Commission's enforcement of the lobbyist-registration laws, and had deleted his Twitter account immediately following the hearing. At the attorney's-fees hearing, the new district judge assigned to the case indicated his reluctance to grant the motion to dismiss but ultimately granted it, apparently swayed by Sullivan's argument that Judge Burgess's oral ruling was conclusive and because the TCPA timeline requiring a ruling within 30 days of the hearing was soon approaching.

It bears reiterating that Sullivan is the party who initiated the lawsuit below, and, had he not filed his petition for judicial review, the Commission's order would remain effective and fully enforceable. The Commission appeared in this lawsuit only responsively , and its amended pleading as realigned plaintiff did not add new claims or change the substance of the claims that were the subject of both its final order and Sullivan's petition.

Because we hold that the TCPA does not apply, we do not reach the second step in the TCPA analysis of whether the Commission met its burden to prove a prima facie case.

After denying Sullivan's TCPA motion, the order at issue in this appeal continues: "The Court further finds that Sullivan's motion is frivolous and solely intended to delay," and then grants the Commission's request for attorney's fees and costs, without further elaboration.

Sullivan does not challenge the amount of the award, only the court's decision to award fees based on its findings.

For instance, the Commission points to the affidavit of Sullivan's attorney, attached to the TCPA motion in support of its request for attorney's fees, indicating that the attorney drafted the motion four months before the Commission filed its amended pleading as realigned plaintiff and two months before Sullivan filed his motion to realign.